## Case No. 11,588.

### RAWLE v. PHELPS.

[2 Flip. 471; 9 Cent. Law J. 46; 8 Reporter, 356; 8 N. Y. Wkly. Dig. 551.][1]

Circuit Court, E. D. Michigan. June 16, 1879.

REMOVAL OF CAUSES—CITIZENSHIP— CHANGE OF RESIDENCE PENDENTE LITE.

A cause cannot be removed to the federal court under the act of 1875 [18 Stat. 470], unless the citizenship, required by the act, existed at the time of the commencement of the suit in the state court.

[Disapproved in Curtin v. Decker, 5 Fed. 385.]

[This was an action by Henry Rawle against John Phelps.]

On motion to remand to the circuit court for the county of Macomb. The suit was begun in the state court November 8, 1878; and the petition for removal, under the act of 1875, was filed February 11, 1879. When the suit was commenced, it appears that both parties were citizens of Michigan, but the petition for removal and the affidavits made in opposition to his motion showed that the defendant became a citizen of Wisconsin between these two dates. The question was, whether, under the act of 1875, the parties must be citizens of different states at the commencement of suit.

Mr. Stanley, for complainant.
Mr. Phelps, for defendant.

BROWN, District Judge. So far as cases originating in the federal courts are concerned, it is perfectly well settled that the requi-

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 8 Reporter, 356, and 8 N. Y. Wkly. Dig. 551, contain only partial reports.]

site citizenship must exist at the commencement of the suit, and that the subsequent removal of the non-resident party to the state where the suit is pending, will not oust the jurisdiction. In Morgan's Heirs v. Morgan, 2 Wheat. [15 U. S.] 290; Mollan v. Torrance, 9 Wheat. [22 U. S.] 537; and in Dunn v. Clark, 8 Pet. [33 U. S.] 1, this rule was carried so far as to sustain a bill to enjoin a judgment against a resident trustee under the will of a non-resident plaintiff. See, also, Clarke v. Matthewson, 12 Pet. [37 U. S.] 164.

Such being the general policy of the law, it would seem, by parity of reasoning, that where both parties are citizens of the same state at the time the suit is commenced, the subsequent removal of one of them to another jurisdiction, ought not to change the status of the case, or confer a right of transfer to the federal court; at least, such construction ought not to be given, unless the words of the statute are clear and explicit. A reversal of a policy adopted at the formation of the government and continued for seventy-five years, ought not to be inferred from doubtful or ambiguous words. The observations of Mr. Justice Miller in Johnson v. Monell [Case No. 7,399] are pertinent here: "This is such a wide departure from the restrictions by which congress had heretofore guarded the right of removal, and the proposition that a party instituting the litigation in a state court, and pressing it to the point here mentioned, can, by his own voluntary change of residence, acquire a right to remove the case from the forum of his own selection, is so startling, that nothing short of the clearest evidence that congress had both the power and the intention to grant such a right, will justify this procedure."

Under the act of 1789 [1 Stat. 73] it was held, in Insurance Co. v. Pechner, 95 U. S. 183, that the petition for removal must show affirmatively that the plaintiff was a citizen of another state at the time the suit was commenced. It is true the court decided the question upon a technical construction of the statute, and did not undertake to state what its opinion would be under the subsequent acts, and the case is therefore not a controlling authority here. But a careful examination of the language of the two acts satisfies me that there is no substantial difference between them. The act of 1789 provided that "if a suit be commenced * * * by a citizen of the state in which the suit is brought, against a citizen of another state * * * and the defendant shall, at the time of entering his appearance in such state court, file a petition, etc." The act of 1875 provides that "any suit, etc., now pending or hereafter brought in any state court, where the matter in dispute exceeds * * * the sum of $500 and * * * in which there shall be a controversy between citizens of different states, etc., either party may remove." There is certainly no distinction between the words "commenced" and "brought." The use of the

word "exceeds" in the present tense, obviously refers to the time the action is brought. The words "shall be a controversy" are somewhat equivocal, but I think they should be regarded as controlled by the previous word "exceeds" and should be construed in connection with it. There would be no reason for holding that the jurisdictional test as to amount should be applied to the time when the suit is begun, and the test as to citizenship to a subsequent time. The fact that the statute of 1875, as well as those of 1866 [14 Stat. 306] and 1867 [14 Stat. 558], extends the time within which the petition may be filed, proves nothing as to the time when the requisite citizenship should exist. If it did then the supreme court should have decided in the Pechner Case that it was sufficient if the petition showed the defendant to be a non-resident corporation, at the time of entering its appearance in the state court.

For these reasons it seems to me quite clear that the act was never intended to give a party the right of ousting the jurisdiction of a state court, which has once lawfully attached, by removing to another state. It would practically put it in the power of either party to any suit in a state court involving over $500, to transfer his case to the federal court, by acquiring a residence in another state pending the litigation.

My attention has not been called to any case under this act arising in the federal court, where the exact question has been determined, though it would appear by the syllabus in Phoenix Life Ins. Co. v. Saettel [33 Ohio St. 278], that the supreme court commission of Ohio have expressed views adverse to the position here taken.

In Indianapolis, B. & W. Ry. Co. v. Risley, 50 Ind. 60, the supreme court of that state held that there was no difference in regard to the time when the requisite citizenship must exist, between the act of 1789 and those of 1866-67, under which it was held that the petition must aver that the parties were citizens of different states at the time the suit was begun. The act of 1867 is like that of 1875 except in the use of the words "in which there is a controversy," instead of "in which there shall be a controversy." As before observed, I think this difference quite immaterial. A like ruling to that in Indiana was made by the supreme court of Massachusetts in Tapley v. Martin, 116 Mass. 275.

I do not regard the decision in the case of Johnson v. Monell [supra] as necessarily inconsistent with these authorities. In that case the petition for removal set forth that the plaintiff was a citizen of Iowa when the suit was brought in the state court; that he became a citizen of Nebraska, of which the defendant was also a citizen, while the suit was pending, and was so when it was tried, and that after this, by a voluntary change of residence, he became, and at the time he made his application for the transfer of his case to the federal court, was again a citi-

zen of the state of Iowa. The petition for removal was made after the case had been tried' in the state court and a new trial granted. While the reasons given for sustaining the jurisdiction of the federal court are undoubtedly in conflict with the views here expressed, the order denying the motion to remand might well have been sustained by the fact that at the time the suit was originally commenced in the state court, the plaintiff and defendant were citizens of different states. The plaintiff might have begun his suit originally in the federal court, and under all the authorities his subsequent removal to the state where it was pending would not have ousted the jurisdiction. This being so I see no reason why, if he had been a citizen of another state when the suit was begun in the state court, he might not have removed it to the federal court, even though at the time of his petition for removal he was a citizen of the state where the suit was pending. The case of McGinnity v. White [Case No. 8,802], is nearer in point. In that case the suit was begun February 28, 1870, in a state court of Nebraska, both parties being citizens of the state and the amount involved being less than $500. The petition was under the act of 1866, and it appeared that pending the suit in the state court, the defendant had in good faith become a resident of the state of New Jersey, and that owing to the long delay the interest on the amount originally involved had increased the amount then in controversy to over $500. Judge Dillon sustained the removal upon the authority of Johnson v. Monell, confessing doubts respecting the soundness of the view, but adopting it because it seemed equally consistent with the language of the act, and more consistent with the reason and purpose of it than the opposite conclusion. In my opinion the right of removal under such circumstances ought not only to be consistent with the language of the act, but the language ought not to leave the right open to serious doubt.

The case will therefore be remanded to the circuit court for the county of Macomb.

NOTE. In the circuit court of the United States at Memphis, Aug. 22, 1881, Hammond, J., decided an important question on motion to remand. The case was that of Woolridge v. McKenna [8 Fed. 650]. Woolridge, as assignee of McKenna, a bankrupt, brought suit in the state court to set aside certain conveyances of real estate, on the ground that they were fraudulent. To that bill he made McKenna, and his daughter, Maud B. McKenna (citizens of Shelby county, as he alleged) parties. Whereupon, McKenna, the father, as next friend of the daughter, Maud B., petitioned for removal of said cause into the federal court in the name of said Maud B. McKenna, by himself as next friend, etc., alleging that said Maud B. was a citizen of Kentucky, etc. Judge Hammond rules that a father cannot by merely depositing his child in this or that state continue to change its domicile for any purpose without changing his own. He must relinquish and abandon his rights in that behalf to the child itself or another, or by operation of law the child's domicile will shift only with his own. As the affidavit in this particular case showed only that the fa-

ther, a citizen of Tennessee, had placed his child to reside with friends in Kentucky, (permanently as he supposed) it does not follow that he may not change that intention and resume parental control, or that these friends may not compel him so to do by sending back the child to him. * * * As long as he exercises his legal control qua father, or has the right to do so, his child's domicile must be his own. The order declares that as Maud B. McKenna (the daughter) is a citizen of Tennessee, for that as well as other reasons of record, the cause must be remanded.

RAWLEY, The M. K. See Case No. 9,679.

RAWLINGS (HEINECKE v.). See Case No. 6,326.

RAWLINGS (RHEA v.). See Case No. 11,737.

RAWLINS, The. See Case No. 8,007.

RAWLINSON (UNITED STATES v.). See Case No. 16,123.

RAWSON, In re. See Case No. 4,837.

RAWSON (BLAKE v.). See Case No. 1,499.

RAWSON (WALKER v.). See Case No. 17,083.

## Case No. 11,589.

### In re RAY.

[2 Ben. 53; 7 Am. Law Reg. (U. S.) 283; Bankr. Reg. Supp. 44; 1 N. B. R. 203; 6 Int. Rev. Rec. 223; 1 Am. Law T. Rep. Bankr. 46.] [1]

District Court, S. D. New York. Dec., 1867.

STATUTE OF LIMITATIONS—EXAMINATION OF BANKRUPT.

1. A debt, to be barred by limitation so as not to be provable in bankruptcy, as not being "due and payable" according to the nineteenth section of the bankruptcy act [of 1867 (14 Stat. 529)], must be shown to be barred throughout the limits of the United States.

[Disapproved in Re Hardin, Case No. 6,048. Cited, but not followed, in Re Kingsley, Id. 7,819; Re Cornwall, Id. 3,250; Re Noesen, Id. 10,288; Nicholas v. Murray, Id. 10,223.]

In this case, upon the day appointed by the register, on the application of Wheeler, Madden & Clemson, creditors, for the examination of the bankrupt [James D. Ray] and his wife and other witnesses, under section 26 of the bankruptcy act, the bankrupt objected to the examination, on the ground that the claim of those creditors was barred by the statute of limitations of the state of New York, and, in support of such objection, the bankrupt put in before the register an affidavit and plea, for the purpose of availing himself of the plea and defence of such statute. The facts were conceded by the cred-

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 1 Am. Law T. Rep. Bankr. 46, contains only a partial report.]